EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARGARO VALENTÍN VÁZQUEZ, acusado y apelante.

Número 15404.
*Sometido:* 2 de noviembre de 1953. *Resuelto:* 18 de enero de 1954.

*Héctor Lugo Bougal,* abogado del apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Margaro Valentín Vázquez fué acusado de incendio malicioso en primer grado. Celebrado el juicio, el jurado que entendió en el mismo lo declaró culpable del delito imputádole, sentenciándosele por el antiguo Tribunal de Distrito de Puerto Rico, Sala de Ponce, a sufrir de 10 a 18 años de presidio.

El primer error que señala en apelación es al efecto de que el tribunal sentenciador erró al no instruir al jurado "que si un edificio ha resultado meramente chamuscado, (¹) no se ha cometido el delito de incendio malicioso." El ar-

---

(¹) Chamuscar, según el Diccionario de la Lengua Española, publicado por la Real Academia Española, Décimo Séptima edición, 1947, significa: "Quemar una cosa por la parte exterior."

tículo 398 del Código Penal define este delito como "el acto voluntario de pegar fuego a un edificio ajeno con intención de destruirlo." El artículo 402 del mismo cuerpo legal dispone, asimismo, que "para constituir un incendio, en el sentido de este artículo, (²) no será necesario que el edificio incendiado quede destruído. *Bastará que se haya pegado el fuego de modo que prenda en cualquiera parte del material del mismo."* (Bastardillas nuestras.)

La instrucción que motiva el primer señalamiento fué oportunamente solicitada por el acusado y denegada por el tribunal, fundado éste en que la misma se había trasmitido en las generales especiales. Al finalizar el juicio el acusado excepcionó específicamente todas y cada una de las instrucciones dadas, incluyendo el no haberse trasmitido las interesadas por él. En sus instrucciones al jurado el juez informó a aquél que "para constituir un incendio no será necesario que el edificio incendiado quede destruído, pues bastará que se haya pegado fuego de modo que prenda en cualquier parte del material del mismo . . ."; que "si ustedes los señores del jurado, por el resultado de la prueba presentada, llegan a la conclusión de que . . . este acusado . . . voluntaria y maliciosamente y con la intención de destruirla pegó fuego y quemó la casa . . . . durante las horas de la noche, y esta casa no era propiedad del acusado y sí de una tercera persona en ese caso . . . deben declarar al acusado culpable del delito de incendio malicioso en primer grado"; y que "si . . . por el conflicto de la prueba presentada llegan a la conclusión que este acusado no pegó fuego, ni quemó durante las horas de la noche el edificio o la casa a que se refiere la acusación, entonces . . . deben declarar al acusado no culpable del delito de incendio malicioso en primer grado . . ."

Las instrucciones así dadas se ajustaron a derecho y no solamente ello es así sino que, conforme hizo constar el tribunal al denegarla, abarcaban la instrucción solicitada.

---

(²) El texto inglés que es el que prevalece (véase el artículo 13 del Código Civil, edición 1930) dice *"chapter"* (capítulo).

Como se ha visto, el artículo 402 del Código Penal dispone que "bastará que se haya pegado el fuego de modo que prenda en cualquier parte del material del mismo." Así lo indicó claramente el tribunal.

En el Estado de California, donde hasta el año 1929 su artículo 451 del Código Penal leía en la misma forma que reza el 402 del nuestro, se dijo por su más alto tribunal en *People* v. *Haggerty*, 46 Cal. 355, citando de Bishop *on Criminal Law*, sección 325: "la palabra *burn* (pegar fuego) entra en la definición del delito de incendio en el derecho común, al igual que ocurre en muchos estatutos. Ella significa consumir por fuego. Si la madera se ennegrece, pero ninguna de sus fibras se borra, entonces no ha habido *burning*. Pero no es necesario que la madera forme fogata. Y el incendio de cualquier parte de un edificio, no importa cuán pequeña, hace que el delito quede consumado, al igual que si se incendiara la totalidad del mismo. Así pues, si el piso de alguna casa se chamusca en un solo sitio, de forma que se destruya cualquiera de las fibras de la madera, ello es suficiente quemazón a los fines del delito de incendio." Dijo además, que: "Hubo prueba tendente a demostrar que un sitio en el piso se chamuscó en tal forma que el fuego pegado por el acusado destruyó las fibras de la madera; y no hubo evidencia directa que contradijera ese hecho. Es cierto que según algunos de los testigos el lugar ése solamente aparecía ennegrecido y no chamuscado. Pero no podemos decir que el veredicto fuera tan contrario a la prueba que justifique por tal motivo la revocación de la sentencia." Véase también *People* v. *Simpson*, 50 Cal. 304.

■ El segundo error imputado al tribunal a quo es que éste erró "al no dar instrucciones a los señores del jurado sobre el delito de tentativa de incendio malicioso." Conforme veremos más adelante, la prueba tanto del fiscal como del acusado demostró la consumación del delito de incendio malicioso. En su consecuencia, no estaba justificada una instrucción sobre el delito en grado de tentativa.

■ También sostiene el apelante que el tribunal sentenciador erró al no instruir a los señores del jurado "que si ellos creían que el acusado tiró el quinqué y que por motivo de ello surgió un fuego, pero que no hubo la malicia de crear ese fuego, debían absolver al acusado." La misma fué denegada por dicho tribunal debido a que ni la "prueba de defensa ni del Pueblo sostiene esta instrucción." Según la lectura que hemos hecho de la prueba, tal conclusión respecto a la misma se ajusta a la verdad. La prueba de El Pueblo fué en síntesis que el acusado y Guillermo Burgos León se fueron a las manos, entre siete y ocho de la noche del día que tuvieron lugar los hechos imputados a aquél, cerca del lugar donde vivían, debido a que el acusado hacía alardes de haber tenido relaciones íntimas con la mujer de Burgos; que posteriormente, como a las 10 de la noche, el testigo Sergio Almodóvar Pinedo, quien vivía por allí cerca oyó, mientras sintonizaba su radio, una persona que pasaba, así como el ruido de una caja de fósforos; que en ese momento se asomó y vió al acusado prendiendo un fósforo; que el seto de la casa de Burgos cogió fuego; que entonces Almodóvar gritó "fuego" y llamó a Burgos y a Rosa Mattei; que el testigo cogió una palangana y comenzó a apagar el fuego; que le preguntó al acusado "Guambí, ¿qué vas a hacer?" y éste contestó "deja que se queme ese bandido"; que luego vino la policía y encontraron el quinqué en el mismo sitio donde el acusado pegó el fuego; que se quemó en parte la parte de atrás de la casa; que sabe que "se quemó una parte porque él puso la mano y soltó tizne" que Guillermo Burgos León oyó cuando Sergio Almodóvar gritaba "fuego" y se levantó; que ya entraba el humo por el cuarto y que oyó al acusado que decía "al que se tire por esta puerta le tumbo el pescuezo, lo voy a matar como un perro"; que Burgos se tiró por la ventana y agarró a Guambí por la espalda, éste echó a correr y Burgos le vió un machete; que mientras hacía *aguajes* con el machete, el acusado seguía corriendo; y que Burgos le tiró con una botella para defenderse cuando el acusado venía para encima de él con un machete.

Preguntado Burgos si no vió que en la otra mano el acusado tuviera un quinqué contestó "ya eso estaba acá, cuando primero pegó fuego . . . déjeme explicarles. Cuando yo desperté ya había pegado fuego y me tiró con el quinqué. . . . ¿cuando él venía con el machete, cuánto tiempo después? Después de haber pegado fuego. La casa estaba ardiendo."

También demuestra la prueba de cargo que el quinqué fué ocupado al lado del seto que estaba chamuscado, del seto que había recibido calor y candela; que "allí olía mucho a gas"; que el acusado "había regado bastante gas"; y que "el cabo Pérez pasó la mano y sacó tizne."

La prueba de la defensa consistió únicamente en la declaración del propio acusado. Ésta fué en el sentido de que él había tenido relaciones sexuales con Rosa Mattei, mujer de Burgos; que oyó que Rosa y Burgos estaban peleando y cuando él (el acusado) iba entrando por el callejón, Burgos le tiró un puñetazo y él echó a correr por ser más débil, siguiéndolo Burgos hasta su casa; que al notar el acusado que Burgos quería entrar "y al yo ver que venía para encima de mí, le eché mano al quinqué que era lo primero que había y le tiré y él cogió un cuchillo y cuando venía para encima de mí con el cuchillo dentro de mi casa, yo pelé por el machete . . ." Preguntado por su abogado si había oído declarar al testigo Almodóvar Pinedo y si era cierto que había tratado de pegarle fuego a la casa con el receptáculo de gas, contestó "en ningún momento . . . No le dí, porque según le tiré con el quinqué dió contra la casa el quinqué"; y que éste estaba encendido porque eran como las 8 de la noche.

Por la reseña anterior se verá que no hubo nada en la prueba de cargo o de descargo que tendiera a demostrar que la casa ocupada por la Mattei y Burgos cogiera fuego con motivo de haberle tirado el acusado con un quinqué a este último. La de El Pueblo como se ha visto, tendió a demostrar que el acusado pegó fuego antes de Burgos levantarse, antes de éste ver al acusado con el machete y antes del acusado tirarle a Burgos con el quinqué. Y la del acusado meramente

que él le tiró a Burgos con el quinqué encendido, pero en forma alguna controvierte el hecho de que el fuego ya había comenzado. Tampoco demuestra que el fuego surgió como resultado de haberse tirado el quinqué. Bajo las circunstancias, no fué error de parte del tribunal a quo negarse a dar la instrucción que es objeto de este señalamiento.

■ En el último error señalado se sostiene que el veredicto es contrario a la prueba. Hemos leído ésta cuidadosamente y a nuestro juicio el veredicto rendido encuentra apoyo en la misma.

*Debe confirmarse la sentencia apelada.*